CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 19 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HOWARD W. JONES,<br>    Plaintiff, | )<br>)   Civil Action No. 7:06cv00144<br>) |
| v. | )<br>)<br>)   By: Michael F. Urbanski |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | )   United States Magistrate Judge<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

Plaintiff Howard W. Jones ("Jones") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying Jones' claim for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383 ("Act"). This case was referred to the undersigned Magistrate Judge on April 11, 2006, for report and recommendation. Following the filing of the administrative record and briefing, oral argument was held on December 14, 2006. As such, the case is now ripe for decision.

The undersigned finds that substantial evidence supports the Commissioner's determination that Jones retains the residual functional capacity to do a limited range of work at the sedentary level and that proper hypotheticals encompassing all noted functional limitations were posed to the Vocational Expert ("VE"). However, because there are marked inconsistencies in the VE's testimony regarding the title and type of jobs available in the national economy for a person with Jones' functional limitations and the Dictionary of Occupational Titles ("DOT") and the administrative law judge ("ALJ") relied on the VE's testimony in finding such jobs exist, the

undersigned cannot find that there is substantial evidence to support the ALJ's determination that jobs exist in significant number for a person with Jones' limitations. Accordingly, it is recommended that the ALJ's decision be reversed and remanded for additional vocational evidence.

## I.

Jones was born on August 30, 1955, and he dropped out of school in the seventh grade. (Administrative Record [hereinafter R.] at 27, 89, 146) Jones' previous work includes that of a heavy construction worker and farmer. (R. 141) Jones filed an application for SSI on or about August 30, 2002, alleging that he became disabled on November 30, 1993, due to arthritis, pain in his left wrist, elbow, knee, and foot, rotator cuff tears in both shoulder, back pain, hearing loss, blindness in one eye, depression, and difficulty reading.[1] (R. 16, 28-40, 114) Jones' claims were denied at both the initial and reconsideration levels of administrative review, (R. 15), and a hearing was held before an ALJ on November 4, 2003. (R. 15, 23-45) On April 22, 2004, the ALJ issued a decision denying Jones' claims for SSI, finding that Jones retains the residual functional capacity ("RFC") to perform sedentary work that involves only limited public contact or communication with co-workers, is performed in a non-hazardous environment, and can be done by someone who has no sight in one eye and no hearing in one ear. (R. 22) Further, the ALJ determined that the VE identified several jobs in the national economy which met this

---

[1] Jones previously filed an application for SSI benefits on March 30, 1998 alleging disability since November 30, 1993. This application was denied initially and on reconsideration, and a hearing was held on December 16, 1998. By decision dated February 19, 1999, Jones' application was denied by an ALJ, and on September 30, 2002, this decision was affirmed by the United States District Court for the Western District of Virginia. (R. 15); see Jones v. Barnhart, 7:02cv00450.

2

criteria and, thus, that Jones is not disabled from all work. (R. 22)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on February 17, 2006, when the Appeals Council denied Jones' request for review. (R. 6-8) Jones then filed this action challenging the Commissioner's decision.

## II.

Jones argues that the ALJ erred in failing to specifically address certain evidence in the record establishing that Jones has impairments precluding his ability to work and in finding that he retains the RFC for a limited range of sedentary work. (Pl. Summ. J. at 12-19) Accordingly, he requests that the decision of the Commissioner be reversed or, in the alternative, remanded for reconsideration. (Pl. Summ. J. at 20)

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, the reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## III.

First, Jones argues that the ALJ failed to give proper weight to the state agency

3

physicians' opinions that Jones cannot climb a ladder, rope, and/or scaffolds; that he can only occasionally balance, stoop, kneel, crouch, and/or crawl; is limited in his ability to reach in all directions with his left upper extremity; has limited depth perception bilaterally; has limited vision in his left eye; has limited ability to hear; and should avoid even moderate exposure to hazards.

The ALJ determined that Jones retained the RFC to perform sedentary work that involves only limited public contact or communication with co-workers, is performed in a non-hazardous environment, and can be done by someone who has no sight in one eye and no hearing in one ear. (R. 22) On its face the ALJ's decision clearly took into account the state agency physicians' opinions that Jones' ability to work and communicate with the public and co-workers would be limited by sight and hearing impairments and that he should not work in any hazardous environment. Moreover, as sedentary work is defined as work which requires minimal exertion of force in terms of reaching, lifting, pulling, and pushing and involves sitting most of the time[2], the RFC determination plainly accounted for the state agency physicians' opinions that Jones could only do occasional balancing, stooping, kneeling, crouching, crawling, and/or reaching.

## IV.

Second, Jones argues the ALJ failed to give weight to evidence in the record establishing that his shoulder impairment significantly impacted his ability to work. Specifically, Jones asserts that the ALJ failed to mention in his written opinion the results of the October 25, 2001 MRI establishing Jones had a tear in the supraspinatus tendon in his left shoulder and other medical evidence supporting Jones' allegations of resultant disabling pain. Although the ALJ

---

[2] See http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

4

failed to recite the results of the October 25, 2001 MRI of Jones' shoulder, the ALJ amply discussed Jones' testimony regarding the extent of his shoulder injury and other medical records relating to the alleged injury in determining that Jones' shoulder injury caused limited impact on his ability to work. For example, the ALJ notes in his opinion that Jones testified he had "rotator cuff tears in both shoulders," he reported to his physicians on several occasions he suffered from shoulder pain, and that in 2003 Jones was diagnosed with "'probable' torn rotator cuff with subsequent shoulder pain and diminished range of motion." (R. 16-19) Accordingly, the undersigned finds that although the 2001 MRI was not mentioned specifically, the ALJ's opinion adequately accounts for evidence in the record detailing Jones' shoulder impairment.

V.

Third, Jones asserts that the ALJ erred in finding that Jones retains the RFC to do sedentary work. Jones testified that he had torn rotator cuffs in both shoulders and was therefore unable to lift his arms much above his waist. (R. 31) He further indicated that his doctor informed him he needed to have surgery approximately a year before the hearing, but to date he had not had the surgery nor had he heard anything further from the physician about scheduling the surgery. (R. 31-32) Jones did not testify that his shoulders caused him any pain, but he noted that because of back pain and knee pain he can only sit or stand for two or three minutes before needing to change position and that he can only walk for about 25 yards before needing an opportunity to rest. (R. 39-40)

In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not

5

required to accept Jones' subjective allegation that he is disabled by pain, but rather must determine, through an examination of the objective medical record, whether he has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). Then, the ALJ must determine whether Jones' statements about his symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

Although Jones' shoulder, knee, and back complaints are not new complaints and are well documented, the record suggests that these ailments have had minimal impact on his functional ability over the years and are amenable to non-surgical treatment. For instance, in January 2001, despite complaints of chronic, long-term, severe foot pain, Jones reported that just four months earlier he had been employed as a construction laborer. (R. 371-72) In December 2001, following the MRI establishing that Jones had a left shoulder rotator cuff injury and nearly a year after he began complaining of severe shoulder pain, (R. 344-45), Jones informed Dr. Silver that he continued to work as a farmer. (R. 338) Similarly, despite an MRI of his left knee showing a small effusion and tear of the medial meniscus in July 2002, (R. 275-76), Jones refused to have any surgical intervention scheduled until January 2003, surgery was never done, and in September 2003 he reported to Dr. Hill that he was now working part-time on a dairy farm. (R. 271, 442) Even assuming that Jones' employment as a construction laborer and farmer did not qualify as substantial gainful activity, the fact that he was physically and mentally able to

6

maintain employment requiring significant physical exertion, despite his allegedly disabling pain, indicates that he retains the functional capacity to work. See 20 C.F.R. §§ 404.1574, 416.971, 416.972.

Additionally, the objective medical record does not support Jones' contention that he is disabled by pain. X-rays of Jones' left wrist and left shoulder taken in September 2001 were negative for any significant abnormalities. (R. 346-47) Likewise, x-rays of Jones' back and knees taken in 2003 revealed only mild, local degenerative disc disease in his back, with no evidence of degenerative osteoarthritis of the spine or inflamation of the spine, and only mild degenerative changes in his knees. (R. 202, 427) Further, although Dr. Ford noted that Jones' range of motion in his left knee was severely limited, during numerous office visits, at most, Jones was noted to have a slight limp and was usually documented with having a normal gait. (R. 240, 246, 267, 279, 369, 427, 432) Jones was regularly advised to increase the amount of exercise he did, and there are no notations in the record suggesting that Jones should restrict his physical activity due to any of his alleged injuries or resultant pain. (R. 314, 317, 327, 331, 352) Additionally, Jones repeatedly advised his physicians and other medical staff that his shoulder, knee, and back pain were well controlled with medication and/or physical therapy. (R. 245-46, 253, 256, 277-281, 305, 350)

Furthermore, the record establishes that Jones' claims that he is totally disabled by pain are inconsistent with his reported daily activities. On his daily activities questionnaire Jones reported that every day he cares for his pets, takes care of his personal needs, pays bills, prepares meals, walks, drives, visits with friends and family outside of the home, and spends several hours watching television, reading, and listening to the radio. (R. 149-52) Jones reported to his

7

nutritionalist that he ate out with his girlfriend once or twice a week. (R. 330) In October 2003 Jones informed his physician that he was going hunting in Colorado in a few days, (R. 430), and on November 17, 2003, Jones' mother advised his physician that he would need to reschedule his regular appointment because he had traveled to West Virginia on business. (R. 427)

The record establishes that Jones was employed at least part of the time he alleges to have been wholly disabled, he repeatedly advised his physicians that his discomfort was controlled by medication, his physicians did not impose any exertional restrictions on his physical activities, and his reported daily activities were minimally impacted by pain. Accordingly, the undersigned finds that substantial evidence supports the ALJ's conclusion that the intensity and persistency of Jones' pain does not significantly impact his ability to work and that Jones' retains the residual functional capacity to do some sedentary work. See Craig, 76 F.3d at 595; see Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965) (stating if a symptom can be reasonably controlled by medication or treatment, it is not disabling); see Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding of no disability where plaintiff testified that she suffers from severe pain and hand problems where plaintiff was able to attend Church twice a week, read books, watch television, clean the house, wash clothes, visit relatives, feed pets, manage household finances, and perform exercises recommended by her chiropractor); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (upholding a finding of no disability where plaintiff was able to cook, shop, wash dishes, and walk to town every day).

## V.

At step five of the disability determination, the Commissioner bears the burden of establishing that the claimant can engage in employment that exists in significant number in

national economy. 20 CFR § 404.1560(c)(1-2). In determining if the Commissioner met this burden, the ALJ shall generally accept evidence from a VE, who, based on the claimant's age, education, work experience, and RFC, testifies that there are jobs for such a person in the national economy. See 20 C.F.R. § 404.1520(g)(1), Morgan v. Barnhart, 142 Fed. Appx. 716, 720-21 (4th Cir. 2005).

Although the undersigned finds that there is substantial evidence in the record to support the ALJ's RFC determination and that the ALJ posed proper hypothetical questions to the VE, the undersigned finds the VE failed to properly identify jobs available in the national economy which satisfied the imposed limitations. The ALJ asked the VE to identify jobs available in the national economy for a person whose age, education, and work history are similar to Jones' and who is limited to sedentary work that involves only limited public contact or communication with co-workers, is performed in a non-hazardous environment, and can be done by someone who has no sight in one eye and no hearing in one ear. (R. 42-44) The VE identified two jobs by name and specific reference to their Dictionary of Occupational Titles ("DOT") numbers: sedentary hand packer, DOT # 920.687-030, and assembler, DOT # 559.687-014.

In reviewing both of these entries, the undersigned found that neither were described in the DOT as identified by the VE. The job title assigned to DOT # 920.687-030 is tobacco hand

9

bander[3], and the job titled assigned to DOT # 559.687-014 is pharmaceutical ampoule sealer.[4] On their face neither of these job titles are consistent with the jobs the VE identified as being available in the national economy for a person with Jones' noted limitations. Further, as the VE did not describe the job duties of a sedentary hand packer or an assembler nor did he describe how Jones' limitations were compatible with these job functions, and as the job titles for the identified jobs are clearly different than those the VE testified to, the court cannot determine if the jobs identified by the VE are compatible for a person with Jones' noted functional limitations. See Social Security Ruling 00-4p. Thus, the undersigned recommends that this case be remanded to the Commissioner for further development of the record on this issue.

## VI.

Based on the foregoing, it is recommended that defendant's motion for summary judgment be denied and that this case be remanded under sentence four of 42 U.S.C. § 405(g) to

---

[3]The job duties required of a tobacco hand bander are:

Wraps trademark band around cigars: Moistens or applies paste to tip end of band and presses ends of band together around cigars. Places banded cigars aside for further processing.

http://www.oalj.dol.gov/LIBDOT.HTM#definitions

[4]The job duties required of a pharmaceutical ampoule sealer are:

Seals ampoules filled with liquid drug products, preparatory to packaging: Rotates neck of ampoule in flame of bunsen burner to melt glass. Grips tip of ampoule, using tweezers, and draws tip away from neck to seal ampoule as glass hardens. Places sealed ampoule in basket for sterilization and inspection. May hold unsealed ampoule against jet of inert gas to displace air. May immerse sealed ampoules in dye bath to test for leaks. May tend machines that steam-wash and fill ampoules.

http://www.oalj.dol.gov/LIBDOT.HTM#definitions

the Commissioner for further development of the record as outlined in this opinion. 42 U.S.C. § 405(g) ("The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing.").

The Clerk is directed immediately to transmit the record in this case to the Hon. James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

**ENTER:** This 18th day of January, 2007.

_____
Michael F. Urbanski
United States Magistrate Judge